# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAROUSH EBRAHIMI,

        Plaintiff,

v.

PERCY MEYERS,
JENNIFER MYERS,
CHRISTINE BROWN,
ANGELA LANKFORD,
WEXFORD HEALTH SOURCES, INC.,
PA DESAI, and
BOBBI BOUM,

        Defendants.

Case No. 25-cv-01820-MAB

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Daroush Ebrahimi, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. Pursuant to 28 U.S.C. § 1915A, the Court must screen prisoner complaints to filter out non-meritorious claims and dismiss any portion of a complaint that is legally frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from a defendant who by law is immune. 28 U.S.C. § 1915A.[1] The Court also must consider

---

[1] The Court has jurisdiction to screen the Complaint in light of Plaintiff's consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' and Wexford's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Illinois Department of Corrections, Wexford, and this Court.

whether any claims are improperly joined in one action and subject to severance. *See Dorsey v. Varga*, 55 F.4th 1094 (7th Cir. 2022); *George v. Smith*, 507 F.3d 605 (7th Cir. 2007).

<h3 align="center">THE COMPLAINT</h3>

Plaintiff asserts that he suffers from "serious medical ailments which effect his ability to walk, ambulate, and perform daily tasks." (Doc. 1, p. 6). He also has a high risk for blood clots because of a heart condition. (*Id.*). In the Complaint, Plaintiff alleges various instances of inadequate and delayed medical care that occurred beginning around 2020[2] through 2024 at Pinckneyville Correctional Center.

Plaintiff first describes being given a new medication on September 29, 2023, which caused his "stomach to swell," and he began "spitting up" blood from 5:30 p.m. to 9:30 p.m. (Doc. p. 6-7). He states that Dr. Meyers discontinued his usual medication and issued the prescription for this new medication without consulting the outside medical provider who originally prescribed his usual medication. (*Id.* at p. 7). Plaintiff filed a grievance about this incident on October 3, 2023. (*Id.* at p. 6).

Plaintiff does not state when, but at some point, prior to October 2023, he fell three or four times, severely injuring his back and left shoulder. (Doc. 1, p. 7). He claims that for three years he was not scheduled for surgery. (*Id.* at p. 7-8). He asserts that cancellations were caused by Christine Brown, the health care unit administrator. (*Id.* at p. 8). Plaintiff also states that the reason for the delay in receiving surgery "ranged from being short of staff to unexplained." (*Id.* at p. 8). He filed grievances about not being taken

---

[2]  It is not clear when Plaintiff's difficulties in receiving medical care started. He states that he began filing grievances about not receiving surgery for his shoulder in October 2023, and that he was not taken to an outside hospital for "at least a period of 3 years." (Doc. 1, p. 7-8).

to Southern Illinois Hospital for surgery on October 3, 2023, November 3, 2023, November 29, 2023, and December 13, 2023. (*Id.* at p. 7).

Plaintiff next claims that Dr. Meyers refused to issue him an aspirin regime, which was recommended by a heart specialist, for two months. (Doc. 1, p. 8). Plaintiff asserts that Dr. Meyers told Plaintiff that he was not required to follow the recommendations of an outside doctor. (*Id.*). Plaintiff further asserts that several nurses told him that they and Dr. Meyers believe he is faking his medical condition and that is why Dr. Meyers was not prescribing aspirin. (*Id.* at p. 9). Plaintiff claims that the aspirin also assisted with pain management. (*Id.*). Without the aspirin, Plaintiff states he experienced pain and was at risk of developing blood clots. (*Id.*). He asserts that he filed grievances about needing aspirin on December 31, 2023, and January 24, 2024. (*Id.* at p. 8).

Sometime prior to February 18, 2024, Plaintiff had an appointment with Dr. Meyers. (Doc. 1, p. 9). During the appointment, Dr. Meyers told Plaintiff he no longer needed the sling for his left shoulder. (*Id.*). Dr. Meyers then proceeded to "yank" the sling from Plaintiff's arm causing pain to his injured shoulder. (*Id.*). Plaintiff filed a grievance about the incident on February 18, 2024. (*Id.*).

At an unspecified time, Plaintiff was in the health care unit for treatment. (Doc. 1, p. 9-10). Jennifer Myers, the physical therapist, instructed Plaintiff to stand and walk from one side of the hallway to the other side. (*Id.* at p. 10). Plaintiff informed Myers that he could not walk, and Myers issued Plaintiff a disciplinary ticket for insolence and refusing a direct order. (*Id.*). Plaintiff claims that the disciplinary ticket served no legitimate penological interest and was issued in order to harass and punish him in retaliation for

filing grievances. (*Id.*). He filed a grievance about Myers' conduct on March 1, 2024. (*Id.* at p. 9).

Plaintiff asserts that two outside medical providers, Dr. Mirza and Dr. Chu, prescribed the use of a sling for Plaintiff's left arm and the medications Tramadol and Norvasc. (Doc. 1, p. 10). According to Plaintiff, Dr. Meyers refused to issue Plaintiff the sling and did not order the medications. (*Id.*). Plaintiff filed a grievance on July 2, 2024, and he was prescribed Tramadol for his pain for ten days. (*Id.* at p. 11). After ten days, Dr. Meyers canceled the prescription without any explanation. (*Id.*).

Plaintiff also claims that a CPAP machine was ordered by an outside cardiologist on April 10, 2024, but he was not given a CPAP machine until three months later. (Doc. 1, p. 12). He asserts that while waiting for the CPAP machine he experienced sleep deprivation. (*Id.*). Plaintiff believes that the delay in receiving a CPAP machine was caused by policies and procedures implemented by Wexford to reduce costs. (*Id.*).

On September 23, 2024, Plaintiff submitted a grievance complaining that he had not been provided with mobility assistance in the form of railings and a shower chair when he showered. (Doc. 1, p. 13). In response to his grievance, Plaintiff was provided a shower chair, but the chair was not "proper to use in a shower setting" because it had wheels. (*Id.*). The wheels caused the chair to roll while Plaintiff was showering. (*Id.*). Plaintiff fell several times while using the chair, injuring his back and arms. (*Id.*). Plaintiff states he notified several correctional officers and health care staff about the issues with the chair, including Christine Brown, but he had to wait 58 days for a proper chair. (*Id.*).

From July 2024 through November 2024, Plaintiff says that filed grievances about

not receiving pain medication. (Doc. 1, p. 13). He states that he was suffering from extreme pain after repeated falls in the shower, and Dr. Meyers kept attempting to change his pain prescription without consulting his outside medical provider. (*Id.* at p. 14). Plaintiff states he went four months without receiving proper pain medication. (*Id.*).

And finally, Plaintiff states that he filed grievances in July and December 2024, about not being scheduled for a cystoscopy and surgery to remove hyperplastic tissue because he was not urinating properly. (Doc. 1, p. 14). Plaintiff did not receive the required surgery until December 19, 2024, a year and a half after the surgery was initially ordered. (*Id.*). He states that while he waited for surgery he was in pain from a hyperextended bladder due to his inability to urinate properly. (*Id.*). Plaintiff asserts that the surgery was delayed because of policies and procedures enacted by Wexford. (*Id.* at p. 15).

## DISCUSSION

Plaintiff's Complaint is a laundry list of the issues he has had with his medical care for an unspecified number of years and combines claims that appear misjoined. The Federal Rules of Civil Procedure limit the types of claims and parties that can be properly joined in a single lawsuit, and the courts look to Rules 18 and 20 to determine when a plaintiff may bring multiple claims against multiple defendants. *See UWM Student Assoc., v. Lovell,* 888 F.3d 854, 863 (7th Cir. 2018).

Rule 20 prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Therefore, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against

Page 5 of 10

each respondent that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *See George*, 507 F.3d at 607. It is only once the requirements of joinder of parties under Rule 20 are met that a plaintiff may then bring unrelated claims against a defendant under Rule 18. FED. R. CIV. P. 18(a).

The Court has discretion when deciding whether to sever or to dismiss improperly joined defendants and claims under Federal Rule of Civil Procedure 21. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011); *UWM Student Assoc.*, 888 F.3d at 863. Furthermore, in *Dorsey v. Varga*, the Seventh Circuit instructed that when faced with a misjoined pleading, it is preferable for a court to begin by, "striking the complaint, explaining the misjoinder, and giving the plaintiff at least one chance to fix the problem." 55 F.4th at 1107.

Here, Plaintiff complains about instances of unrelated misconduct by Defendants that are not transactionally related. Despite the common theme of inadequate medical care, many of the allegations are plainly unrelated and do not belong in the same suit. For example, he alleges that Dr. Meyers wrongly prescribed a new medication for an unspecified ailment in 2023, Jennifer Myers issued him a false disciplinary ticket for conduct in the health care unit at an unspecified time, because of a Wexford policy he was denied a CPAP machine in 2024, and he was not scheduled for shoulder surgery for three years due to conduct on the part of Christine Brown.[3]  While some of the allegations may be properly joined, the Court cannot discern which claims arise from the transaction

---

[3] Plaintiff does not provide dates for when this waiting occurred and when he ultimately received surgery.

Page 6 of 10

or occurrence because Plaintiff is vague on timeframes and the dates of his injuries and treatment. He repeatedly provides dates for when he grieved certain events but not for when the event or the alleged misconduct itself *occurred*. For these reasons, as currently pled, Plaintiff's claims cannot proceed together. *See Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012) (A "litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot.").

Pursuant to *Dorsey v. Varga*, Plaintiff's Complaint will be stricken based on the improper joinder. *See* 55 F. 4th at 1107-08. He may pursue *only* related claims against a single group of defendants in this case and must file separate lawsuits to pursue his other claims. Because Plaintiff is in the best position to decide which claims he intends to pursue in this lawsuit, he will be given an opportunity to file a First Amended Complaint before the Court conducts the required merits screening of his claims under Section 1915A.

**MOTION FOR RECRUITMENT OF COUNSEL**

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 9), which is **DENIED**.[4] In an attempt to find an attorney on his own Plaintiff lists the names and addresses of seven law firms he has contacted via written correspondence. He also attaches a copy of the letter sent to these law firms. The list of law firms and the letter are identical to the information provided in Plaintiff's motion for recruitment of counsel filed in his other civil case currently being litigated in this district, *Ebrahimi v. Schroeder-Harber,*

---

[4] In evaluating the Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

No. 25-cv-01819-RJD, Doc. 9. In the letter, Plaintiff provides information regarding the facts asserted in *Ebrahimi v. Schroeder-Harber*. He describes the defendant confiscating his wheelchair despite an order from the doctor. Based on the contents of this letter, Plaintiff has not sought counsel for *this particular case*. Because Plaintiff has not met his threshold burden of demonstrating reasonable efforts to find counsel for the instant case, the motion is denied. (Doc. 9).

The Court also finds that Plaintiff is capable of representing himself, at least for now. Plaintiff argues that he is unable to proceed pro se because English is not his first language. He is a college graduate, however, this is not his first case filed in federal court, and he has the assistance of other inmates. (*see* Doc. 11). The Court believes he will be able to draft and submit an amended complaint, which only requires a short and plain statement telling what each defendant (listed in the case caption), did wrong. Accordingly, the Court finds that Plaintiff is capable of representing himself at this stage.

DISPOSITION

The Complaint (Doc. 1) is **STRICKEN** for improper joinder of claims and/or defendants. Plaintiff is **GRANTED** leave to file a First Amended Complaint on or before **May 29, 2026,** that focuses on one claim or set of related claims against one or more defendants that arises from a single transaction or occurrence or series of transactions or occurrences.

An amended complaint supersedes and replaces the original complaint, rendering it void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n. 1 (7th Cir. 2004). Therefore, the Court will not accept piecemeal amendments to the original Complaint.

Page 8 of 10

The First Amended Complaint must stand on its own, without reference to any previous pleading, and Plaintiff must re-file any exhibits he wishes the Court to consider along with the First Amended Complaint. The First Amended Complaint will be subject to review under 28 U.S.C. § 1915A.

Should Plaintiff file a First Amended Complaint, it is strongly recommended that he use the civil rights complaint form designed for use in this District. **He should label the form "First Amended Complaint" and use the case number for this action (No. 25-cv-01820-MAB)**. Plaintiff should identify each defendant in the case caption and include sufficient factual allegations against each defendant to describe what the defendant did or failed to do to violate his constitutional rights, *see DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990) (a successful complaint generally alleges "the who, what, when, where, and how ....").

Should Plaintiff attempt to bring unrelated claims against different groups of defendants in the same complaint, the Court will exercise its discretion under Rule 21 to sever or dismiss them. Therefore, Plaintiff should instead file one or more additional lawsuits to address each distinct group of claims he wishes to pursue. If he chooses to do so, Plaintiff should remain mindful of the 2-year statute of limitations applicable to his claims under Section 1983 and should file any new lawsuit before the 2-year time period expires. Plaintiff will be obligated to pay a separate filing fee for each additional suit he files, and he will receive a "strike" for any suit that is dismissed because it is frivolous, malicious, or fails to state a claim. 28 U.S.C. § 1915(g).

If Plaintiff fails to file his First Amended Complaint *in this case* within the allotted

Page 9 of 10

time or consistent with the instructions set forth in this Order, the entire case will be dismissed with prejudice for failure to comply with a court order and/or failure to prosecute his claims. FED. R. CIV. P. 41(b); *Ladien v. Astrachan,* 128 F.3d 1051 (7th Cir. 1997); *Johnson v. Kamminga,* 34 F.3d 466 (7th Cir. 1994); 28 U.S.C. § 1915(e)(2).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

**IT IS SO ORDERED.**

**DATED: April 29, 2026**

**MARK A. BEATTY**
**United States Magistrate Judge**