IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAROUSH EBRAHIMI,

                Plaintiff,

                          Case No. 25-cv-01820-MAB

v.

PERCY MEYERS,

                Defendant.

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

Plaintiff Daroush Ebrahimi, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center (Pinckneyville), brings this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights. The First Amended Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.[1] Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. *See* 28 U.S.C. § 1915A(b).

### THE FIRST AMENDED COMPLAINT

Plaintiff asserts that he is seventy-five years of age and "suffers from a host of

---

[1] The Court has jurisdiction to resolve motions and to screen the First Amended Complaint in light of Plaintiff's consent to the full jurisdiction of a magistrate judge and Wexford's and Centurion's limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandums of Understanding between Wexford, Centurion, and this Court.

ailments that are very serious which effects his ability to walk, ambulate, and perform daily tasks." (Doc. 16, 5). On September 29, 2023, Plaintiff began vomiting and defecating blood. (*Id.*). While attempting to alert correctional staff of his medical needs, he slipped in his own vomit, injuring his right hip. Plaintiff subsequently fell two more times and injured his left shoulder, left lower back, and spine. (*Id.*).

On October 2, 2023, Plaintiff was taken to Southern Illinois Hospital for an MRI. (Doc. 16, p. 5). The MRI results showed that Plaintiff had a severe lower back and spine injury and that his shoulder was injured, but the results "showed no signs of rotator tear." (*Id.*). Plaintiff was prescribed Neurontin and tramadol for his injuries. (*Id.*).

Plaintiff was treated by Dr. Meyers at Pinckneyville on November 3, 2023. (Doc. 16, p. 6). During the appointment, Dr. Meyers "refused to examine Plaintiff's injuries" and discontinued the tramadol medication. (*Id.*). Instead, Dr. Meyers prescribed Tylenol for Plaintiff's pain. (*Id.*). When Plaintiff asked Dr. Myers why the tramadol medication was being canceled, Dr. Meyers responded, "We are spending tones (sic) of money on you, this medication is very expensive." (*Id.*). Plaintiff requested that Dr. Meyers continue prescribing tramadol because without it he would be in excruciating pain. (*Id.*). Plaintiff asserts that when he was not taking tramadol he could not sleep, enjoy reading or entertainment, or move from his bed to the toilet. (*Id.*). At some point, Plaintiff informed Dr. Meyers that his pain level had increased when the medication was changed from tramadol to Tylenol. (*Id.*).

An x-ray of Plaintiff's left humerus was ordered by Dr. Noureldin and taken November 26, 2023. (Doc. 16, p. 17). In the x-ray report, Dr. Wang recommended a follow-

up x-ray in three months in order to "establish stability to exclude any periosteal reaction to any underlying pathology." (*Id.*).[2]

On February 15, 2024, Plaintiff was taken to the health care unit at Pinckneyville when he returned from an outside medical appointment. (Doc. 16, p. 6). Plaintiff describes the medical staff as being confused that he was there. (*Id.*). Plaintiff was seen by Dr. Myers, who was "visibly upset with Plaintiff." (*Id.*). Plaintiff alleges that when Dr. Myers noticed that Plaintiff was wearing a sling to support his injured left shoulder, Dr. Meyers asked, "Why are you wearing that sling[?] YOU DO NOT NEED IT, GIVE IT HERE NOW." (*Id.*). Plaintiff asserts that Dr. Meyers then grabbed the sling and tried to pull it off him "with great force." (*Id.*). Plaintiff yelled for Dr. Meyers to stop and that Dr. Meyers was hurting his shoulder. (*Id.*). Nurses then alerted a correctional officer of the altercation. (*Id.*). The correctional officer arrived and asked Plaintiff to remove the sling and give it to Dr. Meyers. (*Id.*). Plaintiff complied with the request. (*Id.*). Plaintiff asserts that the incident left him experiencing excruciating pain in his left shoulder, "wors[e] than ever before." (*Id.*). The pain was so severe that it woke him up every hour each night. (*Id.*). Plaintiff believes that Dr. Myers's assault exacerbated his shoulder injury. (*Id.*).

Plaintiff asserts that he then engaged in a "campaign of grievances." (Doc. 16, 6). In the grievances, he complained about being denied tramadol and his continual left shoulder pain. (*Id.*). Plaintiff was referred to a specialist on May 27, 2025, and he had an

---

[2] In the Statement of Claim, Plaintiff asserts that Dr. Noureldin recommended comparison of the x-ray results with a prior exam if available and a three-month follow-up x-ray. (Doc. 16, p. 7). According to the medical records attached to the First Amended Complaint as exhibits, Dr. Noureldin was the "Ordering Physician," and Dr. Wang reviewed and signed the x-ray report. (*Id.* at p. 17).

appointment with the specialist on September 4, 2025. (*Id.* at p. 7). The specialist diagnosed Plaintiff with "left shoulder complete rotator cuff tear," and prescribed tramadol. (*Id.*). Plaintiff contends that Dr. Meyers caused his torn rotator cuff when Dr. Meyers assaulted him on February 15, 2024. (*Id.*). As of filing the First Amended Complaint, Plaintiff continues to receive his tramadol prescription. (*Id.*).

## DISCUSSION

Based on Plaintiff's allegations and his articulation of his claims, the Court designates the following counts:

**Count 1:**   Eighth Amendment claim against Dr. Meyers for deliberate indifference to Plaintiff's serious medical need, his shoulder injury and associated pain.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly*[3] pleading standard.**

Plaintiff asserts that beginning with his first appointment with Dr. Meyers on November 23, 2023, Dr. Meyers repeatedly provided him with constitutionally inadequate medical care for his shoulder injury and associated pain. Plaintiff claims that Dr. Meyers canceled his pain medication for monetary reasons and opted for a cheaper medicine that was not effective; failed to schedule Plaintiff for a follow-up x-ray as recommended; and forcefully removed a sling from Plaintiff's shoulder and confiscated

---

[3] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

it, causing further injury and pain that went untreated. At this stage of the case, Plaintiff's allegations are sufficient to state a claim against Dr. Meyers for deliberate in difference. *See Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (finding deliberate indifference where medical defendants persisted in a course of conservative treatment for eighteen months despite no improvement); *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir.2009) (stating that deliberate indifference may be inferred when a physician makes a treatment decision that falls far afield of accepted professional medical judgment); *Swiecicki v. Santos*, No. 11-cv-808-JPG,  2014 WL 1758691, at *3 (S.D. Ill. May 1, 2019) (finding an genuine issue of material fact regarding whether a doctor acted with deliberate indifference in delaying evaluation and treatment of a painful shoulder ailment ultimately diagnosed as a torn rotator cuff and labrum for a period of 7 months and ignoring symptoms of severe pain or providing medications that were not effective in controlling that level of pain). Count 1 therefore survives preliminary review.

**MOTION FOR RECRUITMENT OF COUNSEL**

Plaintiff has filed a second motion asking the Court to recruit him counsel. (Doc. 14). Determining whether to appoint counsel is a two-step analysis. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007) (en banc). In short, the Court must make the following two inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or effectively been precluded from doing so, and (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself. *Id.*

In denying Plaintiff's first request for court recruited counsel (Doc. 9), the Court found that Plaintiff had not met his threshold burden of demonstrating reasonable efforts

Page 5 of 10

to find counsel for this particular case. The documentation Plaintiff provided in support of his request demonstrated that he had sought counsel to represent him in another civil case he is currently litigating in this district, *Ebrahimi v. Schroeder-Harber*, No. 25-cv-01819-RJD, but not *this* case. The Court also determined that Plaintiff was capable of representing himself at this early stage. Although English is not his first language, the Court observed that he is a college graduate, this is not his first case in federal court, and he had the assistance of other inmates. Based on this information, the Court found that he had the ability to draft and submit an amended complaint.

In his current Motion, Plaintiff provides a list of reasons why is unable to represent himself in this case. He states that (1) he is unable to afford counsel; (2) his imprisonment will greatly limit his ability to litigate; (3) the issues involved in this case are complex; (4) he has limited access to the law library; (5) he has limited knowledge of the United States law; (6) trial will likely involve conflicting testimony and counsel would be better positioned to present witnesses and cross examine witnesses; and (7) his English is extremely limited. Plaintiff asserts that he has made repeated attempts to obtain representation and has written to lawyers, but because he is not a native English speaker, he is unable understand the letters that are sent back to him or to have a conversation over the phone.

The current circumstances presented in this case warrant recruitment of counsel. It now appears that Plaintiff has made reasonable, yet unsuccessful, attempts to obtain a lawyer, and to the extent he has not, the language barrier has precluded him from doing so. Furthermore, the Court finds that this case is at the point where the difficulty of

Page 6 of 10

litigation exceeds Plaintiff's ability to litigate pro se. The First Amended Complaint has survived merits review and will enter the discovery phase. As discussed, Plaintiff has difficulty reading and writing the English language. While he receives assistance from other inmates in drafting some documents, it is clear from the record that this help is inconsistent. Based on his latest motions (*see* Doc. 14, 15, 17, 19), Plaintiff lacks the "personal ability" to coherently respond to discovery and any motion for summary judgment that may be filed. *See Dewitt v. Corizon, Inc.*, 760 F.3d 654, 658 (7th Cir. 2014). The Court therefore **GRANTS** the second Motion for Recruitment of Counsel. (Doc. 14). The Court will endeavor to recruit an attorney to represent Plaintiff in a separate order.

## DISPOSITION

For the reasons stated above, the First Amended Complaint (Doc. 16) survives preliminary review pursuant to Section 1915A. **COUNT 1** shall proceed against Dr. Meyers.

The Clerk of Court shall prepare for Dr. Meyers the following: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to the Defendant's place of employment as identified by Plaintiff. If the Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If the Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, his last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Because this suit includes allegations regarding physical injury and medical care, the Clerk of Court is **DIRECTED** to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**Pursuant to Local Rule 8.2(b), the Defendant needs only to respond to the issues stated in this Merit Review Order.**

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and (if applicable) his or her attorney were deemed to have entered into a stipulation that any unpaid costs taxed against the applicant shall be paid from any recovery secured in the action.

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 17, 2026**

_Mark A. Beatty_
_____

**MARK A BEATTY**
**United States Magistrate Judge**

NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more**. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.